**SIGNED this 14 day of April, 2008.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br>    LIBERTY FIBERS CORPORATION<br>    f/k/a Silva Acquisition Corporation,<br><br>                         Debtor. | No. 05-53874<br>Chapter 7 |
| MAURICE K. GUINN, Trustee, and MPLG, LLC,<br><br>        Plaintiffs,<br><br>vs.<br><br>JOLLEY ROCK INVESTMENTS, LLC and<br>A & E SALVAGE, INC.,<br><br>        Defendants. | Adv. Pro. No. 07-5039 |

# M E M O R A N D U M

APPEARANCES:

    MARK S. DESSAUER, ESQ.                       MARK A. COWAN, ESQ.
    HUNTER, SMITH & DAVIS, LLP                SWANSON & COWAN, LLP
    Post Office Box 3740                                   717 West Main Street, Suite 100
    Kingsport, Tennessee 37664                   Morristown, Tennessee 37814
    *Attorney for MPLG, LLC*                           *Attorney for Jolley Rock Investments, LLC*

**Marcia Phillips Parsons, United States Bankruptcy Judge**.  This adversary proceeding is before the court on a motion by defendant Jolley Rock Investments, LLC ("Jolley Rock") to dismiss plaintiff MPLG, LLC's claims against it for lack of subject matter jurisdiction.  For the reasons discussed hereafter, Jolley Rock's motion to dismiss will be denied.  This court has the authority to decide its own jurisdiction.  *See Parker v. Goodman (In re Parker)*, 499 F.3d 616, 625 (6th Cir. 2007); *see also* 28 U.S.C. § 157(b)(3).

I.

The debtor Liberty Fibers Corporation ("Debtor") filed for bankruptcy relief under chapter 11 on September 29, 2005.  An order converting the case to chapter 7 was entered shortly thereafter on November 21, 2005.  Maurice Guinn was appointed chapter 7 trustee ("Trustee").  At the time of the bankruptcy filing, the Debtor owned numerous assets, including a rayon manufacturing plant and a waste water treatment plant and related facilities ("WWTP") located on a site in Lowland, Tennessee.  The Trustee continued to operate the WWTP after the bankruptcy case's conversion, not only for the benefit of the estate but also for the benefit of other entities on site, some of whom paid the estate for the waste water treatment services.  Water from the WWTP, as well as other waste water from the estate's property, is discharged into the Nolichucky River pursuant to the Debtor's National Pollution Elimination System Permit ("NPDES Permit"), issued by the Tennessee Department of Environment and Conservation, Division of Water Pollution Control ("TDEC").

One of the other entities on the Lowland site is Jolley Rock, which owns, but does not presently operate, a manufacturing facility it purchased from Intercontinental Polymers, Inc. ("IPI") on August 31, 2006.  The main building in Jolley Rock's facility was originally built over an underground spring, necessitating since its construction the daily pumping of thousands of gallons of spring water from the basement.  When Jolley Rock purchased the facility, the basement spring water was being pumped into a sewer system located on the Debtor's property, where it then flowed to the WWTP for treatment.  Jolley Rock continued this practice for the first few months after its purchase, although it had no prior arrangement with the Trustee for treatment of its water.  Additionally, relatively small amounts of waste water from Jolley Rock's bathroom facilities ran through the estate's sewer system where it was then treated at the WWTP.  The Trustee made

demand on Jolley Rock that it pay for the services provided it in September through November 2006, which Jolley Rock refused to do. To avoid incurring an obligation to the estate for the treatment of its basement water, Jolley Rock in early 2007 began discharging its basement water into a nylon ditch on the estate's property where it then flowed directly into the Nolichucky River without prior treatment at the WWTP. Upon learning of Jolley Rock's actions, the Trustee demanded that Jolley Rock immediately cease discharging its untreated basement water into the nylon ditch, contending that Jolley Rock's discharge subjected the estate to possible liability because Jolley Rock's water enters the Nolichucky River at on outfall site covered by the estate's NPDES Permit. Jolley Rock refused, asserting that its purchase from IPI included an easement for the use of the estate's sewer system, including the nylon ditch; that its basement water had been tested and was not contaminated; and that it had obtained its own discharge permit from TDEC.

On March 2, 2007, the Trustee sold thirty-five acres of the estate's real property, the WWTP, and certain assets associated therewith to MPLG. The Trustee also conveyed to MPLG a non-exclusive easement to use and operate the estate's NPDES Permit, including the responsibility to monitor the estate's outfall sites on the Nolichucky River, pending MPLG's application to the state of Tennessee for its own permit. In return, MPLG agreed to indemnify and hold the Trustee harmless against all claims arising out of MPLG's operation of the WWTP under the authority of the NPDES Permit.

Upon MPLG's acquisition of the WWTP and related authority to operate under the estate's NPDES Permit, MPLG, as had the Trustee, demanded that Jolley Rock cease what it characterized as an illegal discharge into the Nolichucky River. Noting that Jolley Rock appeared to have an easement to use the WWTP, MPLG sought to enter into an agreement with Jolley Rock that would govern such usage, including the terms of payment to MPLG for its waste water treatment services.

When attempted negotiations to resolve the dispute with Jolley Rock and with another user of the facility, A & E Salvage, Inc., failed, the Trustee and MPLG commenced the present adversary proceeding against them on May 8, 2007, seeking injunctive and declaratory relief and money damages. Specifically, as to injunctive relief against Jolley Rock, the plaintiffs sought to enjoin Jolley Rock's continued release of its untreated basement water into the estate's nylon ditch for

direct discharge to the Nolichucky River, and that Jolley Rock be ordered to redirect its basement water to the WWTP for treatment prior to its discharge to the Nolichucky River.  Additionally, however, MPLG sought to enjoin Jolley Rock from sending its waste water to the WWTP, pending Jolley Rock's agreement to pay for such services or trial.  Regarding declaratory relief, MPLG requested that the court terminate or deem abandoned Jolley Rock's easement to use the WWTP because of Jolley Rock's refusal to enter into good faith negotiations for a service agreement governing such use. Lastly, the plaintiffs sought payment of the waste water treatment services they had previously provided to Jolley Rock.

Concurrently with the filing of the complaint, the plaintiffs filed two applications for preliminary injunctions against the defendants.  A hearing on the applications was held on May 29, 2007, and June 4, 2007, with the parties subsequently filing memoranda of law on the issues and proposed findings of fact and conclusions of law.  The court issued a memorandum opinion on November 28, 2007, preliminarily enjoining Jolley Rock from discharging its basement water into the estate's nylon ditch, pending trial or pending its agreement to indemnify the estate.  However, the court denied the plaintiffs' requested preliminary injunctions to the extent they sought to require treatment of Jolley Rock's basement water at the WWTP by MPLG.

In its November 28, 2007 memorandum opinion, the court also addressed briefly the question of subject matter jurisdiction, since Jolley Rock had denied in its answer the allegations in the complaint that this was a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (O), or alternatively a proceeding related to a case under title 11 of the United States Code which the court may hear pursuant to 28 U.S.C. § 157(c)(1).  Jolley Rock had asserted in its answer that the court lacked subject matter jurisdiction over any dispute between it and MPLG, although Jolley Rock did not otherwise challenge the court's jurisdiction as to the Trustee's claims against it.  The court concluded in its memorandum opinion that because it was not ordering at that time any injunctive relief in favor of MPLG and against Jolley Rock it was unnecessary for it to reach the issue of whether it had subject matter jurisdiction over MPLG's claims against Jolley Rock.  This issue is now ripe, Jolley Rock having filed on January 18, 2008, the motion to dismiss that is presently before the court.   MPLG opposes the motion.

II.

As previously recognized in the November 28, 2007 memorandum opinion, 28 U.S.C. § 1334 grants jurisdiction to the district court over four types of bankruptcy matters: (1) cases under title 11; (2) proceedings arising under title 11; (3) proceedings arising in cases under title 11; and (4) proceedings related to cases under title 11. *Beneficial Nat'l Bank USA v. Best Receptions Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 942 (Bankr. E. D. Tenn. 1998). The first category refers to the bankruptcy case itself, initiated by the filing of a petition. *Id.* The second category refers to causes of action created by the Bankruptcy Code, while the third encompasses proceedings which could not exist outside of a bankruptcy case. *Smith Mech. Contractors, Inc. v. Premier Hotel Dev. Group (In re Premier Hotel Dev. Group)*, 270 B.R.243, 252 (Bankr. E.D. Tenn. 2001). Actions in the second and third categories, proceedings arising under or in cases under title 11, are collectively referred to as "core proceedings." *See* 28 U.S.C. § 157(b)(2). An action in the fourth category is considered non-core, which the bankruptcy court may nonetheless hear if it "is otherwise related to a case under title 11." *See* 28 U.S.C. § 157(c)(1); *see also In re Best Reception Sys., Inc.*, 220 B.R. at 944.

MPLG's causes of action against Jolley Rock are not core proceedings; they were not created by the Bankruptcy Code and they could have existed outside of this bankruptcy case. Thus, this court has jurisdiction over MPLG's claims against Jolley Rock only if they are "related to" Liberty Fibers' bankruptcy case.

> As explained by the United States Supreme Court:
>
> Congress did not delineate the scope of "related to" jurisdiction but its choice of words suggest a grant of some breadth. . . . We agree with the views expressed by the Court of Appeals for the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (1984), that "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate," . . . and that the "related to" language of 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor or the estate. We also agree with that court's observation that a bankruptcy court's "related to" jurisdiction can not be limitless.". . .

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08, 115 S. Ct. 1493, 1498-99 (1995). "[B]ankruptcy

courts have no jurisdiction over proceedings that have no effect on the debtor." *Id.* at 308 n.5.

According to the Sixth Circuit Court of Appeals:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579 (6th Cir. 1990) (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis in original). The Sixth Circuit subsequently expounded on this test in the *Dow Corning* case:

> A key word in the [related to] test is "conceivable." Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on "the debtor's rights, liabilities, options, or freedom of action" or the "handling and administration of the bankruptcy estate."

*Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers of Conn. (In re Dow Corning Corp.)*, 86 F.3d 482, 491 (6th Cir. 1996) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d. 261, 264 (3rd Cir. 1991)).

> [T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b). [*In re Pacor, Inc.*, 743 F.2d at 994] (stating also that "judicial economy itself does not justify federal jurisdiction"). Instead, "there must be some nexus between the 'related' civil proceeding and the title 11 case." *Id.*

*Id.* at 489.

### III.

Jolley Rock argues in its motion to dismiss that MPLG's action to collect sums owed it for waste water treatment services and to enjoin Jolley Rock from sending its sewer water to the WWTP until it reaches an agreement for payment does not involve the Trustee or the bankruptcy estate. According to Jolley Rock, there is no "related to" jurisdiction because MPLG is simply a nondebtor party bringing state-law claims that have nothing to do with the Trustee or the estate against another nondebtor party.

6

This court disagrees. Resolution of MPLG's claims against Jolley Rock is inextricably intertwined with the Trustee's actions against Jolley Rock. Both require resolution of whether Jolley Rock may legitimately discharge its basement water into the bankruptcy estate's nylon ditch where it then flows untreated into the Nolichucky River at a site covered by the estate's NPDES Permit. The testimonies at the hearing on the preliminary injunctions were unequivocal that liability for any improper discharge at sites covered by the estate's NPDES Permit remains with the estate notwithstanding MPLG's easement to operate and monitor the estate's discharge points that it had obtained in connection with its purchase of the WWTP. While Jolley Rock indicated in its motion to dismiss that as a result of the court's prior ruling it has agreed to indemnify the estate "for any pollution or environmental violations caused by activity on Jolley Rock's property," it is unclear whether this indemnity is broad enough to protect the estate from discharges of contaminated basement water that enter the Nolichucky River from the estate's sewer system. And, even if the indemnity language is sufficiently broad, MPLG must indemnify the estate for all claims arising out of MPLG's operation of the WWTP under the authority of the estate's NPDES Permit. Thus, any failure by Jolley Rock to fully meet its indemnification obligations to the estate could trigger MPLG's own liability to the estate since MPLG bears the responsibility for the control and monitoring of the estate's outfall sites on the Nolichucky River.[*]

Contrary to Jolley Rock's contentions, MPLG's claims against it are not simply an action between two non-debtor parties with no relation to the bankruptcy estate. Not only is Jolley Rock disposing of its waste water at a site covered by the estate's permit, but Jolley Rock is also, according to the complaint, sending waste water from its bathroom facilities to the WWTP for treatment by MPLG through sewer lines that traverse the estate's property, without making any arrangement for payment of the services provided it by MPLG. Absent proper and adequate provision by Jolley Rock for the disposal of its waste water, its use of the estate's sewage system

---

[*] In this court's November 20, 2007 memorandum opinion, the court questioned whether MPLG's responsibility to indemnify the estate against all claims arising out of MPLG's operation of the WWTP was relevant to the subject matter jurisdiction issue since Jolley Rock has not asserted any claims against the estate arising out of MPLG's operation of the WWTP. The court's question, however, failed to take into account that MPLG's indemnity obligations extend to MPLG's operation under the estate's NPDES Permit.

to transport its waste water to the WWTP could potentially and "conceivably" damage the estate's real property.

It also must be noted that MPLG seeks in the complaint to terminate Jolley Rock's easement to use the WWTP because of Jolley Rock's alleged failure to enter into good faith negotiations for a service agreement regarding its use. MPLG observes in its response to Jolley Rock's motion to dismiss that Jolley Rock's easement rights pertain not only to the WWTP owned by MPLG but also to the sewer lines running to the WWTP on the estate's property and that this fact, in and of itself, has the potential to alter the estate's rights. This court agrees. Although "the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section 1334(b)," *In re Dow Corning Corp.*, 86 F.3d at 489 (quoting *In re Pacor, Inc.*, 743 F.2d 984, 994 (3rd Cir. 1984)), the dispute between MPLG and Jolley Rock satisfies the required nexus with the Debtor's bankruptcy case.

IV.

An order will be entered in accordance with the foregoing denying Jolley Rock's motion to dismiss.

# # #